SIDNEY MANDELL, Respondent, v. WILLIAM H. COLE et al., Appellants, Impleaded with Others.

Contract — associations — responsibility of members of farmers' co-operative association formed under article 13-A of Membership Corporations Law — action to recover on contract between association and commission merchants for sale on commission of wool consigned by members to association — joint liability imposed upon members only if contract authorized by them was made by corporation as agent of its members and not as principal — liability of members .beyond limits set by statute arises only if association made authorized contract in their behalf — remedy limited to that afforded by statute where contract did not purport to impose obligation upon members as individuals.

1. The words "contracts, debts and engagements" contained in the provision for responsibility of members of an association formed under article 13-A of the Membership Corporations Law (Cons. Laws, ch. 35, amd. L. 1918, ch. 655) seem clearly intended to cover any form of contractual obligation assumed by the association. For corporate debt no joint liability rests upon the members of the association. (*Mandell v. Moses*, 239 N. Y. 555, distinguished.)

2. In an action brought against members of a farmers' co-operative association, organized under the Membership Corporations Law, to recover on a contract entered into between the association and plaintiff's assignor, a firm of commission merchants, for the sale by that firm upon commission of all the wool which the members of the association consigned or delivered to the association for sale, a contention on the part of plaintiff that the association made the contract as agent for its members or such of them as sold their wool through the association, and that he might hold either the association, which made the contract in its own name, or its members, as undisclosed principals for whose collective benefit the contract was made, cannot be sustained. The contract was made by a corporate entity. The plaintiff's assignor must be presumed to have entered into the contract with knowledge of the provision of the statute respecting the liability of the members of the corporation for obligations assumed by the corporation. Joint liability may be imposed upon the individual members of the corporation, only upon the ground that they authorized the corporation to enter into a joint contract in their behalf; that

the contract was made within the scope of that authority; and that the parties intended and understood that the corporation was acting as agent for all its members jointly who might deliver wool to it for sale and not as principal.

3. A contention that the contracts of a corporation formed for the "purpose of acting as the agent for its members or any of them" must be binding upon the members for whom the corporation is acting as agent and must create personal liability against them and that section 207 of the Membership Corporations Law, limiting responsibility of members, has no application to the obligation created against a member or members by contract made by the corporation acting as his or their agent, but refers only to obligations of the corporation assumed by it as principal, cannot be sustained. Even in its narrowest construction, the statute provided for a limitation of liability of individual members for any obligation of the corporation as such. The Legislature clearly contemplated that the corporation might create such obligation in its own behalf. Liability of the members or any of them beyond the limits set by statute and certificate of incorporation, could arise, if at all, only where the corporation made a contract in their behalf in accordance with authority given to the corporation by its principals.

4. Analysis of this contract shows that it was not so made. It did not purport to impose obligation upon the members of the association as individuals to do anything; it left no room for individual obligation. The commission merchants contracted with the association. They accepted the obligation of the association in return for obligations they assumed towards the association. For reimbursement of moneys paid to the corporate association in accordance with their contract, they have only the remedy afforded to them under the statute, and subject to the limitations defined by the statute, of individual responsibility for corporate engagement.

*Mandell* v. *Cole*, 217 App. Div. 800, reversed.

(Argued December 1, 1926; decided December 31, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 14, 1926, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Seward A. Miller, Bradley Fuller* and *Andrew J. Nellis* for appellants. The association was not an entity, and

had no existence separate from its members, and its contracts were the contracts of its members. (*American Tobacco Co.* v. *Federal Trade Com.*, 9 Fed. [2d] 570; *Ostrom* v. *Greene*, 161 N. Y. 353; *McCabe* v. *Goodfellow,*. 133 N. Y. 89; *United Press* v. *Abel Co.*, 87 App. Div. 344.) The individual defendants in this case, with other members of the association, were doing business collectively as a corporate entity under specific authority of the Legislature. The contract at issue was the contract of the association as the real principal and, therefore, the defendants should not be held liable as principals. (*Matter of Wyoming Valley Co-op. Assn.*, 198 Fed. Rep. 436; *People* v. *Sisson*, 222 N. Y. 387; *Matter of Livingston*, 121 N. Y. 94; *People* v. *Fitzgerald*, 180 N. Y. 269; *Bank of Augusta* v. *Earle*, 13 Pet. 587; *Merrick* v. *Van Santvoord,* 34 N. Y. 211; *People* v. *Coleman*, 133 N. Y. 279; *Supervisors* v. *People*, 7 Hill, 512; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Balt. & P. R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Hawthorne* v. *People*, 109 Ill. 302.) Although the statute refers to the purpose of the association as acting as agent for the producer, nevertheless it was the intent of the Legislature that the agency should determine only the relationship between the corporation and its members, but as to third parties contracting with the corporation, it in all respects should act as and be clothed with all the legal responsibilities of principal. (*Texas Farm Bureau Cotton Assn.* v. *Stovall*, 253 S. W. Rep. 1109; *Producers Marketing Co.* v. *Bell*, 234 Ill. App. 222; *Saunders* v. *Adams Express*, 78 N. J. L. 441; *Int. Harv. Co.* v. *Commonwealth*, 147 Ky. 655; *St. Regis Paper Co.* v. *Hubbs-Hastings P. Co.*, 235 N. Y. 30; *Johnson* v. *Dalgren*, 48 App. Div. 537; *Roosevelt* v. *Nusbaum*, 75 App. Div. 117; *Dr. Miles Med. Co.* v. *Park & Sons Co.*, 220 U. S. 373; *Conn* v. *Chambers*, 123 App. Div. 298; *Standard Fashion Co.* v. *Mograne H. Co.*, 258 U. S. 346.) The court erred in its interpretation of the words and intent of the contract. (*Moran* v. *Standard*

*Oil Co.*, 211 N. Y. 187; *Richardson Press* v. *Vandergrift*, 165 App. Div. 180; *Wiley* v. *Borough of Tonawanda*, 26 Fed. Rep. 594.) Even though the member be considered the principal instead of the association, the Legislature has specifically provided the form and extent of recourse on account of marketing contracts made under and pursuant to article 13-A. These provisions are valid and the trial court erred in ignoring them. (*Jemison* v. *C. S. Bank*, 122 N. Y. 135; *Fisher* v. *Motor Boat Club*, 61 Misc. Rep. 66; *Brissy* v. *Star Co.*, 13 Misc. Rep. 349; *Livingston* v. *Roosevelt*, 4 Johns. 251; *Central Trust Co.* v. *West Indian Imp. Co.*, 169 N. Y. 314; *Walton* v. *Coe*, 110 N. Y. 109; *Ripen* v. *U. S. Woven Label Co.*, 205 N. Y. 442; *Hibbs* v. *Brown*, 190 N. Y. 167; *Matter of Wyoming Valley Co-op. Assn.*, 198 Fed. Rep. 436; *Nat. Bank* v. *Dillingham*, 147 N. Y. 603; *Leighton* v. *Lea Assn.*, 146 App. Div. 255.) Even though the defendants be considered as principals under the contract, nevertheless the action of McMurtry & Co. in dealing with the association as the principal in all respects bars the plaintiff from recovering from the individual defendants as principals in this action. (*Buck* v. *Amidon*, 4 Daly, 126; *Burdin* v. *Williamson*, 5 Hun, 560; *Argensinger* v. *Macnaughton*, 114 N. Y. 535; *Meyer* v. *Redmond*, 205 N. Y. 478; *McClure* v. *Central Trust Co.*, 165 N. Y. 108; *Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528; *Matter of Bateman*, 7 Misc. Rep. 633; 145 N. Y. 623; *King* v. *Minnerly*, 156 App. Div. 918; *Ranken* v. *DeForest*, 18 Barb. 143; *Hyde* v. *Paige*, 9 Barb. 150; *Weeks* v. *Goltra*, 7 Fed. Rep. [2d] 838.) Even though the defendants are principals, their action was as separate individuals and not jointly. Their liability, if any, is several, not joint. (*Bangs* v. *Gray*, 12 N. Y. 477; *Pratt* v. *Dwelling House Mut. F. I. Co.*, 7 App. Div. 544; *Butterfield* v. *Lathrop*, 71 Penn. St. 225.) Assuming that there was joint action, it was confined to each pool of wool, there being a pool for each grade. Some of the

defendants did not participate in the pool on which there was a loss. Settlement was made in full for the higher grade wool pools. Therefore, the action cannot be maintained against the defendants who were interested solely in the higher grade wools. (*Fisher Textile Co.* v. *Perkins*, 100 App. Div. 19; *Spencer* v. *Wabash R. R. Co.*, 36 App. Div. 446; *Coney* v. *Brennan*, 167 N. Y. Supp. 903; *Schouten* v. *Alpine*, 215 N. Y. 225; *People ex rel. Solomon* v. *Brotherhood of Painters*, 218 N. Y. 115.)

*Frederick C. McLaughlin* for respondent. The liability in this case is upon a promise implied in law. (*Gihon* v. *Stanton*, 9 N. Y. 476; *Hidden* v. *Waldo*, 55 N. Y. 294; *Blackmar* v. *Thomas*, 28 N. Y. 67; *Mandell* v. *Moses*, 209 App. Div. 531; 239 N. Y. 555; *Brown* v. *McGraw*, 39 U. S. 479.) The defendant association contracted with plaintiff's assignors as agent and not as principal. (Williston on Cont. §§ 307, 308; *Rankin* v. *Probey*, 131 App. Div. 328; *Lombard* v. *Grant*, 35 Misc. Rep. 140; 69 App. Div. 639; *Rogers* v. *Decker*, 131 N. Y. 492; *Marsh* v. *Kaye*, 168 N. Y. 196.)

LEHMAN, J. The defendant, Greene County Sheep Breeders Co-operative Association, Inc., is a membership corporation, organized under article 13-A of the Membership Corporations Law (Cons. Laws, ch. 35), as added by chapter 655 of the Laws of 1918. In May, 1919, the corporate association entered into a contract with the firm of John E. McMurtry & Co. for the sale by that firm, upon commission, of all the wool which the members of the association consigned or delivered to the association for sale. The individual defendants, named in the summons and complaint, are all the members of the corporation who delivered their wool to the association while this contract was in force. Each of these individual defendants delivered his clips of wool to the association at a receiving station. As the

wool was unloaded, the agent of McMurtry & Co. graded the wool of each farmer. The contract made by the association with McMurtry & Co. required that firm to advance to the association specified sums of money on each pound of wool of specified grade " provided said prices are not more than 80% of the value of the wools at the time of taking up." Each of the individual defendants received from the association at the time of delivery a written slip, showing the amount of each of the various grades he had delivered and the amount of advances to be made thereon under the contract, and he was paid the amount of said advances by the association from funds paid to the association by McMurtry & Co. under the contract. All the stipulated advances have been made by McMurtry & Co. to the association, and in turn paid by the association to those of its members who were entitled thereto. The accounts of McMurtry & Co. show that the advances so made exceed the net price eventually received upon the sale, after deducting the commissions and expenses which the association had agreed to pay to them. They have assigned to the plaintiff the contract with the association and their claim for reimbursement or payment of the excess. The plaintiff brought this action against both the association and all its members whose wool was delivered to the association and sold by McMurtry & Co. He served only four of these members. He claims that the association made the contract as agent for its members or such of them as sold their wool through the association, and that he might hold either the association, which made the contract in its own name, or its members, as undisclosed principals for whose collective benefit the contract was made. At the trial he made election to proceed against the four members served, and he has recovered a personal judgment against them jointly for the whole amount of his claim.

This judgment for the entire amount of the deficiency

arising upon the sale of the wool of all the members of the association may be collected out of the real and personal property of the four members who were served or any of them. (Civ. Prac. Act, section 1199.)

The statute under which the association was organized provided for responsibility of each member " as his original liability, for his per capita share of all contracts, debts and engagements of the association existing at the time he becomes a member and created during his membership." Even that limited responsibility for a *per capita* share of corporate indebtedness may be further restricted by certificate of incorporation. (Membership Corporations Law, sec. 207.) The words " contracts, debts and engagements " seem clearly intended to cover any form of contractual obligation assumed by the association. For corporate debt no joint liability rests upon the members of the association. In that respect the present case differs from the case of *Mandell* v. *Moses* (239 N. Y. 555), where the association which made the contract was an unincorporated association and all of its members were liable jointly upon its contractual obligations.

When liability upon such contractual obligation was asserted in that case against the members of the association, no question could arise as to the intent of the parties to impose liability jointly upon the members of the association. The members of the association and not a corporate entity, claimed to be acting in their behalf, were a party to the contract in that case and as such by law bound jointly to carry out its obligations. Here the contract was made by a corporate entity. The plaintiff's assignor must be presumed to have entered into the contract with knowledge of the provisions of the statute respecting the liability of the members of the corporation for obligations assumed by the corporation. If joint liability may be imposed in this case upon the individual members of the corporation, it must be upon the ground that they authorized the corporation to enter

into a joint contract in their behalf; that the contract was made within the scope of that authority; and that the parties intended and understood that the corporation was acting as agent for all its members jointly, who might deliver wool to it for sale, and not as principal.

The accounts of McMurtry & Co. seem to show that the stipulated advance upon some grades of wool did not exceed the price received for wool of that grade after deducting the costs and expenses properly apportionable to such wool. The evidence seems to show that all the wool furnished by some of the appellants was of such grades. For their wool they have not been overpaid, yet they are required to respond for a deficiency arising upon the sale of other grades of wool in which they had no interest.

Section 199 of the Membership Corporations Law as it existed at the time that the association was incorporated (now section 30 of the Co-operative Corporations Law; Cons. Laws, ch. 77) provided that " a cooperative agricultural, dairy or horticultural association may be created under this article as a membership corporation for mutual help, * * * for the purpose of acting as the agent for its members or any of them, performing for them services connected with " various stated activities. It is urged that the contracts of a corporation formed for the " purpose of acting as the agent for its members or any of them " must be binding upon the members for whom the corporation is acting as agent and must create personal liability against them. That section 207 of the Membership Corporations Law, limiting responsibility of members, has no application to the obligation created against a member or members by contract made by the corporation acting as his or their agent, but refers only to obligations of the corporation assumed by it as principal. After the decision in this case was rendered at Special Term, the Legislature by chapter 607 of the Laws of 1926 amended the statutory provisions of the section defining

the purpose for which co-operative non-stock agricultural, dairy or horticultural corporations may be created, by substituting the word " assisting " in place of the words " acting as agent for," and also added a new subdivision to section 69 of the Co-operative Corporations Law, defining liability of members as follows: " All contracts, made by the corporation with third parties, for the sale or other disposition of products which the corporation has contracted with members or non-members to market for them, shall in all respects be deemed to be the obligations of the corporation within the meaning of this section, whether made by the corporation as principal or as agent for such members or non-members." Even though we should assume that by this new subdivision the Legislature intended to give a legislative interpretation of previous limitation of liability of members of co-operative associations rather than to create a new limitation, yet in determining the legal effect of the contract made by the association, we look to the words of the statute in the form in which it existed when the contract was made. Argument, not without force, may be made that even in that form the statute evinced the legislative intent, made clearer by subsequent amendment, that though the co-operative association was formed to act as agent of the members of the corporation or any of them, yet no contract made by the corporation even in the course of its agency should create obligation against the principal or principals beyond the statutory limits of members' liability for corporate obligation, as restricted by the certificate of incorporation. We need not now decide whether the statute should be given such construction. At least it is clear that the Legislature in limiting the liability of members for corporate liability did not intend to do an empty thing. Even in its narrowest construction, the statute did provide for a limitation of liability of individual members for any obligation of the corporation as such. The Legislature

clearly contemplated that the corporation might create such obligation in its own behalf. Liability of the members or any of them beyond the limits set by statute and certificate of incorporation, could arise, if at all, only where the corporation made a contract in their behalf in accordance with authority given to the corporation by its principals. Analysis of the contract shows that this contract was not so made.

The contract recites that it is " between Messrs. John E. McMurtry & Co. of the City and County of New York and the Greene Co. Sheep Breeders Co-operative Association, Inc., of the State of New York." It obligates the association " to consign their clips of wool which is delivered by members of their organization to Messrs. John E. McMurtry & Co. to be sold for their account at the best market price by Messrs. John E. McMurtry & Co." The contract does not otherwise mention the members of the association. It does not expressly impose upon *them*, or any of them, any individual obligation. The court at Special Term found in the use of the words " consign *their* clips of wool which *is* delivered *by members* of their organization to Messrs. John E. McMurtry & Co. to be sold for *their* account," indication that the association was acting as agent for its members and not as principal. The only obligation, however, is to " *deliver* " to the commission merchants the clips so consigned. That obligation is one which the association as such agreed to carry out, and indeed only the association could carry it out. It does not appear that at the time when the contract was made the association had any contract with individual members to sell their wools through the association. Agreements were made thereafter by the association with individual members by which each of such members agreed to consign a specified quantity of wool to the association " for sale in accordance with the plan outlined at the meeting of the Association in Cairo May 10th, and the

provision of the by-laws of the Association governing the sale of products for members." For what principals could the association then have been acting as agent in entering into an obligation to deliver the wool which should be consigned to it by its members? If the association was acting for all the associated members and not merely for those who might thereafter use the association as agent for the sale of their wool, then the association was acting as a unit and in its corporate capacity. Not the individual members but the corporate entity would be bound by the contract. Indeed the complaint and proof would be insufficient to sustain a cause of action upon the theory that the association acted as agent for all its individual members for there is neither allegation nor proof that the individual defendants named in the summons and complaint constitute all the members of the association. They are only the " members of the Association who delivered to the Association their clips of wool." It is difficult to understand how the language of the contract requiring the " Association " to deliver the wool that would thereafter be consigned to it can be construed as creating an obligation on the part of each member who might thereafter consign his wool to the association to see that the association would then deliver not only the wool received from him but also the wool of all the other members of the association. Even though the use of the words " they " or " their " in referring to the association may be inartificial or even inaccurate, yet in the context in which they are used they can refer to nothing else. In addition, the " Association " as such agreed to pay commissions to McMurtry and McMurtry & Co. agreed to make advances to the association. Here there is certainly nothing to show that the association intended to make a contract for its members as joint principals by which each would be bound to pay commissions on the sale of all the wool consigned by the members of the

association and each bound to reimburse the commission merchants for excess of all advances paid such members, though he himself may not have received as an advance more than was due upon the sale of his own wool. When read in the light of surrounding circumstances the intent and effect of the contract seems plain. The association was formed for the purpose of acting as agent for its members or any of them in the sale of their wool. Its members might be required to consign their wool to the association for sale. The association to effectuate the purpose for which it was formed must create a machinery by which it could market advantageously the wool consigned to it. For that purpose, at least, it could contract as a corporation and for the obligation which it assumed for itself in its collective corporate capacity the statute provided a restricted responsibility on the part of its members. This contract merely created such a machinery. The association agreed to deliver to the plaintiff's assignor the wool which it would receive thereafter for sale. It agreed to pay to the plaintiff's assignor a commission of six per cent and to pay certain expenses. In consideration of these promises on the part of the association the plaintiff's assignor agreed to sell the wool delivered to it at the best market price and to pay the association certain advances. The contract did not purport to impose obligation upon the members of the association as individuals to do anything; indeed it left no room for individual obligation. The commission merchants contracted with the association. They accepted the obligation of the association in return for obligations they assumed towards the association. For reimbursement of moneys paid to the corporate association in accordance with their contract with the association, they have only the remedy afforded to them under the statute, and subject to the limitations defined by the statute, of individual responsibility for corporate engagement.

Nor would plaintiff's position be better even if we should hold that the corporate association intended and was understood to contract as agent, with intent to bind its members who thereafter might consign their wool to it for sale. Obligation under the contract would even then be created against such members only if they empowered the corporate association to act as their agents in *making the contract,* or subsequently ratified a contract made in their behalf. Each member of the association undoubtedly constituted the association its agent to sell the wool he consigned to it. Such agency may have included by implication authority to bind the principal by the ordinary contract of sale or even of consignment on commission. We may not by implication read into the terms of the agency authority to bind the principal to joint liability with others who might also use the association as agent; especially not, where the statute which authorized the creation of the agent carefully limited its authority to create a collective obligation for which the members would be responsible. The action taken at the meeting of the association on May 10th was a corporate action. Through that action the officers of the corporation were authorized to bind the corporation by contract. Authorization to bind others as principals by contract could be conferred upon the corporation only by the principals themselves. The individual members who consigned their wool to the association did so under separate written contracts made between the association and each of them, which provided for the sale of a specific quantity of wool " in accordance with the plan outlined at the meeting of the Association in Cairo May 10th and the provisions of the by-laws of the Association governing the sale of products for members." Thereby each constituted the association his agent for the sale of his products. Doubtless the agent had authority to deliver the wool to the plaintiff's assignor for sale. Perhaps there was implied in the agency authority to bind each member

by contract in regard to obligation that might be incurred in the sale of his own wool. The agency did not by fair implication include authority to bind such members to pay commission or expenses on the sale of other wool, nor to repay advances received by other members. It may be that, upon some theory, obligation on the part of the individual members, making such separate contracts with the association, to respond ratably for loss incurred by the commission merchants, might be found to exist. We do not consider or pass upon that question. No such obligation has been asserted here. The judgment here is based upon joint liability for all loss under a contract made by and with the association, either for itself or for the members using it as agents. No authority, express or implied, was given to the association to create such joint liability by contract. No ratification of contract made by the agent for such joint liability has been shown, for it does not appear that the " plan' outlined at the meeting in Cairo May 10th " could not have been carried out by consignment of the wool to McMurtry & Co. without the corporation as agent of the individual members creating a joint obligation. In the absence of proof it may not be inferred that the individual members knew that their agent would attempt to create by contract an obligation which might prove so disastrous. The statute which permits the creation of co-operative associations to act as agent for the sale of products of its members, and creates limited individual liability for collective obligation, should not be so construed that under its provisions the agent has implied or apparent authority to impose upon each member liability for the entire loss that might be sustained upon the sale of the products of the farmers of whole sections of the state. It may not be presumed that the Legislature intended that each farmer should be under such liability. It may not be presumed that each farmer conferred upon the association authority to create such liability as his agent. It may not be presumed that

the association intended to create such liability by this contract. It may not be presumed even that in this case McMurtry & Co. even understood that they received the obligation of each farmer to pay back to them advances paid to the association and distributed among a large number of its members.

For these reasons the judgment of the Appellate Division should be reversed and the complaint dismissed, with costs.

CRANE, J. (concurring).   I concur in the result upon the ground that the Greene County Sheep Breeders Co-operative Association, Inc., having been incorporated under article 13-A of the Membership Corporations Law (Laws of 1918, chap. 655), the contract of the plaintiff's assignor was made with it, and not with the individual members through the corporation as agent. The act not only provides for the incorporation, but also for the liability of the corporation and the limited liability of its members. The contract for the sale of the wool and all the circumstances of this case show that the dealings of the plaintiff's assignor were with the corporation as principal, not as agent. The parties are presumed to have known this statute under which the corporation acted, its privileges, obligations and limits to liability. These facts materially differentiate this case from *Mandell* v. *Moses* (209 App. Div. 531; 239 N. Y. 555). The statute permitting incorporation and the action of the sheep breeders association under it, clearly indicate that the association was intended to act and did act as principal and not as agent. Upon this ground, and this only do I concur.

HISCOCK, Ch. J., CARDOZO and ANDREWS, JJ., concur with LEHMAN, J.; POUND and CRANE, JJ., concur in memorandum by CRANE, J.; McLAUGHLIN J., votes for affirmance on ground that this case cannot be distinguished from *Mandell* v. *Moses* (209 App. Div. 531; affd., 239 N. Y. 555).