440 F.2d 1244
 Ora Alva BROENEN, suing on behalf of herself and certain other holders and former holders of 4¼% Convertible Subordinated Debentures of Beaunit Corporation, Plaintiff-Appellant,
v.
BEAUNIT CORPORATION, a corporation; El Paso Natural Gas Company, a corporation; and Manufacturers Hanover Trust Company, a corporation, Defendants-Appellees.
 No. 18183.
 United States Court of Appeals, Seventh Circuit.
 December 7, 1970.
 
 Kenneth K. Luce, Robert A. Schnur, Michael, Best & Friedrich, Wilwaukee, Wis., for plaintiff-appellant.
 Marvin E. Klitsner, Milwaukee, Wis., Michael A. Cooper, New York City, George Heftler, Union City, N. J., James E. Blackwood, New York City, for defendant-appellee Beaunit Corp.; Foley & Lardner, Milwaukee, Wis., Sullivan & Cromwell, New York City, Platoff, Heftler & Harker, Union City, N. J., of counsel.
 Victor M. Harding, Milwaukee, Wis., Frank H. Heiss, Richard J. Concannon, New York City, for defendant-appellee Manufacturers Hanover Trust Company; Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., Kelley Drye, Warren, Clark, Carr & Ellis, New York City, of counsel.
 Before SWYGERT, Chief Judge, and FAIRCHILD and KERNER, Circuit Judges.
 SWYGERT, Chief Judge.
 
 
 1
 This is an action for damages and equitable relief brought by a holder of one $2,000 face value certificate representing two shares of 4¼ per cent convertible subordinated debentures due August 1, 1990 of Beaunit Corporation (hereinafter called "Old Beaunit"), a nonsurviving party to the corporate merger which gave rise to this action. Jurisdiction is based upon diversity of citizenship in that the plaintiff, who seeks to represent all such debenture holders for purposes of this action, is a resident of Wisconsin and none of the corporate defendants are residents of that state. The jurisdictional amount requirement of 28 U.S.C. § 1332 is satisfied by reason of the class nature of the claims asserted as noted and explained by the district court below.[1]
 
 
 2
 Plaintiff's claim is predicated on the theory that defendants each violated or caused the violation of the covenants of a certain indenture executed in August of 1965 between Old Beaunit and Manufacturers Hanover Trust Company ("Manufacturers Hanover") pursuant to which Manufacturers Hanover became trustee for purposes of the issuance and subsequent conversions, if any, of $25,000,000 principal amount of the above described 4¼ per cent convertible debentures of Old Beaunit. Plaintiff alleges that she purchased her two shares of the debentures on September 3, 1968 and has owned them continuously since that time without exercise of the conversion privilege.
 
 
 3
 On February 23, 1967, El Paso Natural Gas Company ("El Paso"), EPNG Corp. (a wholly-owned subsidiary of El Paso which was a mere corporate shell) and Old Beaunit executed an agreement of merger by which Old Beaunit was to be merged into EPNG in a three-cornered merger. The merger was effected on October 11, 1967, so that Old Beaunit merged into EPNG which simultaneously changed its corporate name to Beaunit Corporation ("New Beaunit"). On the same date, a supplemental indenture was executed by New Beaunit, El Paso and Manufacturers Hanover pursuant to the merger agreement and in compliance with the requirements of § 5.10 of the original indenture. The supplemental indenture provided, inter alia, that the conversion privilege inherent in the convertible debentures was to be exercisable so as to allow conversion of the debentures into common stock of El Paso, the parent corporation of EPNG (and, hence, of New Beaunit). It is undisputed that under the merger agreement and supplemental indenture a debenture holder who exercised the conversion privilege would receive the same number of shares of El Paso common stock upon conversion whether he converted immediately prior to or after the effective date of the merger.
 
 
 4
 Plaintiff's claim of injury derives from the fact that, as the parties all agree, the federal income tax effect of the post-merger relationship of the parties to the merger is such as to render the conversion of the debentures into El Paso common stock, should such occur, an exchange of property which requires recognition for purposes of taxation. The parties herein also agree that conversion would not have been an event requiring income tax recognition but for the three-cornered form of this particular merger. As Fleischer and Cary have noted:
 
 
 5
 The so-called "convertible-bond rule" has been in existence since 1920. It was promulgated in Article 1563, Regulations 45, pursuant to the Revenue Act of 1918, and made applicable to subsequent revenue acts by a series of revenue rulings. The rule may be stated as follows: Where the owner of a bond exercises the right provided in the instrument to convert it into another security of the obligor corporation, the conversion is not considered a closed transaction for tax purposes and therefore does not result in the realization of gain or loss.[2]
 
 
 6
 Plaintiff asserts that the nonrecognition of gain or loss upon the exercise of the conversion privilege is a major inducement to purchase convertible bonds and that the loss of this attractive feature of Beaunit convertibles has caused a permanent reduction in the market value of the debentures. Plaintiff further avers that the cause of this reduction, the undesirable tax treatment of a post-merger conversion, derives from defendants having breached or having caused the breach of the original indenture.
 
 
 7
 The plaintiff and all defendants filed and briefed cross motions for summary judgment in the district court, and each defendant moved to dismiss the cause for failure to state a claim upon which relief could be granted. El Paso also moved that service of process upon it be quashed and that the action against it be dismissed for lack of personal jurisdiction. The district court granted the motions of all defendants for summary judgment, denied all other motions and dismissed the cause. We agree that the defendants were entitled to summary judgment as a matter of law, and we affirm that finding of the district court for the reasons which follow. Since we affirm dismissal of the action against all defendants on the ground stated above, we find it unnecessary to pass on the other issues raised by defendants on this appeal.
 
 
 8
 Plaintiff argues that the form of the merger of October 11, 1967 violates certain covenants contained in §§ 13.01 and 13.02 of the original indenture between Old Beaunit and Manufacturers Hanover of which the debenture holders are, of course, third party beneficiaries. She urges that New Beaunit breached and that El Paso procured, precipitated and participated in breaches of the indenture. She further contends that Manufacturers Hanover violated its fiduciary duties or violated its specific obligations under the indenture, or both, by failing to object to such breaches, by failing to notify debenture holders of the breaches and by participating in the execution of the supplemental indenture which she contends violates the original indenture because of an allegedly unauthorized division of Old Beaunit's obligations thereunder.
 
 
 9
 Section 13.01 of the indenture provides in pertinent part:
 
 
 10
 
 Consolidation, Merger or Sale of Assets Permitted.
 
 
 
 11
 The Company covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, (i) unless * * * (b) the successor corporation (if other than the Company) shall be a corporation organized and existing under the laws of the United States of America or a State thereof and such corporation [sic] shall expressly assume the due and punctual payment of the principal of (and premium, if any) and interest on all the Debentures, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Company by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) unless the Company or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition. (Emphasis added.)
 
 
 12
 Plaintiff's argument is that the italicized language of the foregoing section of the indenture was breached by the substitution of El Paso common stock as the security into which the Old Beaunit debentures became convertible after the merger. She contends that as a result of the substitution, EPNG/New Beaunit did not assume the performance of "all of the covenants and conditions of this Indenture to be performed by [Old Beaunit]" after the merger, as required by § 13.01, but rather EPNG/New Beaunit assumed some of those obligations and El Paso assumed others, most notably the performance of many of the covenants relating to the post-merger exercise of the conversion privilege.
 
 
 13
 We find that no breach of § 13.01 of the original trust indenture occurred as a result of the form of the merger of October 11, 1967.
 
 
 14
 The effect and obvious intent of § 13.01 is that, for a merger to be permissible thereunder, any successor corporation to Old Beaunit must be legally responsible after the merger for the performance of the obligations of Old Beaunit vis-à-vis debenture holders. It is very clear from the supplemental indenture of October 11, 1967 that precisely such a state of affairs existed after the instant merger. The agreement of merger of February 23, 1967 provided in paragraph 3(f) that the conversion privilege of the Old Beaunit debentures would be exercisable in favor of El Paso common stock and required that:
 
 
 15
 [A]n appropriate supplemental indenture shall be entered into between [Manufacturers Hanover] and [EPNG/New Beaunit], and El Paso if it is deemed advisable to include El Paso as a party, providing for the assumption of [the 4¼ per cent convertible subordinated] Debentures by [EPNG/New Beaunit] * * *.
 
 
 16
 The supplemental indenture as executed pursuant thereto contained three "articles." Article I, which was entitled "Amendments," contained amendatory language required by the merger to be substituted for that of the original indenture because of the changed identities and relationships of the parties, none of which was in derogation of any of the obligations of EPNG/New Beaunit to the debenture holders. Article II, which was entitled "Additional Provisions and Covenants," contained what its title suggests, including a section 1 which provided:
 
 
 17
 [EPNG/New Beaunit] hereby expressly assumes the due and punctual payment of the principal of (and premium, if any) and interest on all the Debentures, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of the Indenture to be performed by [Old Beaunit].
 
 
 18
 The express and unambiguous language of section 1 of the supplemental indenture thus clearly rebuts plaintiff's contention which is the essence of her theory of this action, i.e., that El Paso and EPNG/New Beaunit had wrongfully divided the legal responsibility of performing the obligations of Old Beaunit to the debenture holders as established by the original indenture. The foregoing language leaves no doubt that after the merger the primary and undivided responsibility for the performance of all obligations with regard to the debentures lay with EPNG/New Beaunit. Article III (entitled "Miscellaneous") of the agreement of merger similarly contained no provision in derogation of EPNG/New Beaunit's primary responsibility to the debenture holders. The relationship of the parties after the merger thus amounted to a substitution of EPNG/New Beaunit in all material respects with regard to the debenture obligations plus the addition of El Paso as a guarantor that its subsidiary would faithfully perform its duties to debenture holders.
 
 
 19
 Moreover, plaintiff's contention that the language of the original indenture must be construed as prohibiting a three-cornered merger as in the instant case is unpersuasive. Section 5.10 of the indenture provided as follows:
 
 
 20
 
 Provision in Case of Consolidation or Merger.
 
 
 
 21
 In case of any * * * merger of [Old Beaunit] into any other corporation * * *, the corporation into which [Old Beaunit] shall have been merged * * * shall execute and deliver to the Trustee a supplemental indenture providing that the holder of each Debenture then outstanding shall have the right thereafter * * * to convert such Debenture into the kind and amount of shares of stock and other securities and property receivable upon * * * such merger * * by a holder of the number of shares of Common Stock of [Old Beaunit] into which such Debenture might have been converted immediately prior to such * * * merger. * * * (Emphasis added.)
 
 
 22
 We find, as did the district court, that the language of § 5.10 expressly contemplated and authorized the substitution of "other securities and property" for common stock of the successor corporation as that into which the debentures are to be convertible after a merger. Plaintiff contends that this cannot be, because the language of § 5.10 was standard boilerplate in such indentures before such three-cornered mergers were permitted by New York law.[3] While it is true that not until a year after the adoption of the Business Corporation Law in 1961[4] did the New York statutes authorize the exchange of "cash or other consideration" in a statutory merger such as took place here,[5] it does not follow that § 5.10 must be construed so as to render it consistent with antecedent statutory law. It is an ancient principle of contract law that parties are presumed to have contracted with knowledge of and consistent with the law in effect at the time of execution of a contract.[6] It must be presumed, therefore, that the parties to the indenture knew that at the time of execution of the indenture the applicable statute authorized the use of "other securities and property" as consideration in statutory mergers and that they understood and intended the obvious purport of the language of § 5.10 of the indenture to authorize such exchange.
 
 
 23
 Plaintiff also contends that each of the defendants breached § 13.02 of the indenture, caused such breach to occur, or failed to protest such breach or report its occurrence to debenture holders. She asserts substantially identical reasons for her position with regard to § 13.02 as those asserted regarding § 13.01. The pertinent part of § 13.02 provided:
 
 
 24
 
 Succession by Successor Corporation.
 
 
 
 25
 In case of any such merger, consolidation, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Company, with the same effect as if it had been named herein as the party of the first part.
 
 
 26
 Defendants have asserted on oral argument that § 13.02 of the indenture is not a covenant at all, but merely represents a formal clause to insure continuity of interest for the benefit of the successor corporation upon the occurrence of any substantial change in corporate form or identity. However, we need not reach this point because we find that plaintiff's argument with regard to the alleged breach of § 13.02 is identical to that advanced regarding the alleged breach of § 13.01, i.e., that an impermissible division of assumption of duties occurred because of the form of the merger. Plaintiff's contention that § 13.02 was breached is thus bottomed on the same theory as her § 13.01 argument and must fail for the reasons we have stated above.
 
 
 27
 Moreover, plaintiff's claim would not succeed even were we to construe §§ 13.01 and 13.02 in the manner she asserts we must. Such a construction would generate some degree of conflict between §§ 13.01 and 13.02 on the one hand and § 5.10 on the other, it is true. However, as the district court aptly noted:
 
 
 28
 * * * § 5.10 is specifically addressed to the question as to what items may be used for conversions following a merger, whereas [§§ 13.01 and 13.02 deal] only with the obligations of a successor to a merger generally. Specific provisions must control general ones.[7]
 
 
 29
 Plaintiff has also asserted that El Paso, rather than EPNG/New Beaunit, should be treated as the real successor corporation following the merger. We find no validity in that assertion. We note that section 1 of the agreement of merger and section 1(b) of the supplemental indenture identify EPNG/New Beaunit as the "surviving corporation." "Surviving corporation" is defined by the New York Business Corporation Law as:
 
 
 30
 The [existing corporation that is participating in a merger with one or more other corporations] into which one or more other [such] corporations have merged.[8]
 
 
 31
 "Surviving corporation" and "successor corporation" are thus obviously synonymous, and, in this instance, both refer to EPNG/New Beaunit. The gist of this contention of plaintiff appears to be an alternative theory that the indenture was breached because El Paso, rather than EPNG/New Beaunit, was the successor corporation, and it did not assume all of the obligations of Old Beaunit to the debenture holders. For plaintiff to succeed on this theory, we would have to hold, in effect, that the presence of EPNG/New Beaunit in the merger was a mere sham to be disregarded. That we are not prepared to do. As the district judge said below, "While [EPNG/New] Beaunit has no separate shareholders of its own, it is a corporation separate from El Paso."[9]
 
 
 32
 Finally, we must comment on the overriding theory of plaintiff's cause of action which is that, because the non-recognition of gain or loss for income tax purposes upon conversion of the debentures was a major attraction to potential purchasers, an unalterable commitment that nonrecognition would always obtain must somehow be implicit in the indenture. We do not believe that any such obligation was contemplated by the parties to the indenture or understood and relied upon by the purchasers of the convertible debentures. A chief reason for our belief that such was not contemplated is the fact that the favorable nonrecognition rule to which plaintiff adverts is derived from periodic revenue rulings which from time to time have reincorporated an expired treasury regulation into the mysteries of our burgeoning body of federal income tax law.[10] Such a precarious source for the nonrecognition rule would not lead a reasonable man to count heavily on its continuation, no matter how long it had been around. Revenue rulings are, of course, ephemeral, and anyone sufficiently sophisticated to understand the non-recognition rule should certainly be capable of inquiring as to whether one could depend on continuity of its benefits.
 
 
 33
 In addition, it is clear that, even under the more restrictive New York Stock Corporation Law which the Business Corporation Law replaced, the surviving corporation either of a simple two-party merger or a three-cornered merger as took place here could have provided for exercise of the conversion privilege for stock warrants rather than for common stock of the surviving corporation consistent with § 5.10 of the indenture herein.[11] It is clear that a conversion subsequent to a merger where warrants were substituted for common stock for purposes of conversion would have been a taxable event.[12] The parties to the indenture thus clearly did not contemplate any warranty of nonrecognition on conversion.
 
 
 34
 The summary judgment entered for defendants by the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Broenen v. Beaunit Corp., 305 F.Supp. 688, 691-92 (E.D.Wis.1969)
 
 
 [2]
 Fleischer & Cary, The Taxation of Convertible Bonds and Stock, 74 Harv.L.Rev. 473, 477-78 (1961) (footnote omitted and emphasis added)
 
 
 [3]
 It is undisputed by the parties that the substantive law of New York governs the construction of the indenture which is central to this action. We so find
 
 
 [4]
 Ch. 855, [1961] N.Y.Laws
 
 
 [5]
 Ch. 834, § 61, [1962] N.Y.Laws; N.Y. Bus.Corp.Law § 902(a) (3) (McKinney 1963)
 
 
 [6]
 E. g., Mandell v. Cole, 244 N.Y. 221, 155 N.E. 106 (1926).
 
 
 [7]
 Broenen v. Beaunit Corp., 305 F.Supp. 688, 694 (E.D.Wis.1969) (citations omitted)
 
 
 [8]
 N.Y.Bus.Corp.Law § 901(a) (4) (McKinney 1963)
 
 
 [9]
 Broenen v. Beaunit Corp., 305 F.Supp. 688, 694 (E.D.Wis.1969) (citations omitted)
 
 
 [10]
 Fleischer & Cary, The Taxation of Convertible Bonds and Stock, 74 Harv.L.Rev. 473, 477-78 (1961)
 
 
 [11]
 See N.Y. Stock Corp. Law § 86 (McKinney 1951) (superseded in 1961).
 
 
 [12]
 Int.Rev.Code of 1954, § 354; Treas. Reg. § 1.354-1(e) (1956)