**Ora Alva BROENEN, Suing on Behalf of Herself and Certain Other Holders and Former Holders of 4¼ Subordinated Debentures of Beaunit Corporation, Plaintiff,**

v.

**BEAUNIT CORPORATION, a corporation; El Paso Natural Gas Company, a corporation; and Manufacturers Hanover Trust Company, a corporation, Defendants.**

No. 68–C–308.

United States District Court E. D. Wisconsin.

Nov. 3, 1969.

Michael, Best & Friedrich, by Kenneth K. Luce and Robert A. Schnur, Milwaukee, Wis., for plaintiff.

Foley, Sammond & Lardner, by Marvin E. Klitsner, Milwaukee, Wis., for El Paso Natural Gas Co.

Whyte, Hirschboeck, Minahan, Harding & Harland, by Victor M. Harding, Milwaukee, Wis., for Manufacturers Hanover Trust Co.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action for damages and equitable relief. It follows a corporate merger which the plaintiff alleges contained terms which violated the obligations of a securities trust indenture that had been executed by a party to the merger.

The case is now before the court for decision on various motions. The defendant, El Paso Natural Gas Company (El Paso), moves to dismiss the action as to it, or alternatively, to quash service of process on it, on the ground that it is not subject to service of process by this court. The defendants, Beaunit Corporation (Beaunit), and Manufacturer's Hanover Trust Company (Hanover)

move to dismiss the action on the ground that the plaintiff's complaint does not support a claim for the jurisdictional amount of $10,000 required by 28 U.S.C. § 1332.

All defendants have moved alternatively that the action be dismissed for failing to state a claim upon which relief can be granted. Additionally, all defendants and the plaintiff have moved for summary judgment pursuant to rule 56, Federal Rules of Civil Procedure.

Jurisdiction is founded on diversity of citizenship. The plaintiff, Mrs. Broenen, is a citizen of Wisconsin. The defendant, El Paso, was incorporated in Delaware and has its principal place of business in Texas. The defendants, Beaunit and Hanover, were incorporated in New York and have their principal place of business there. The defendant, Beaunit, is the surviving corporation of the merger giving rise to this action. That merger involved another company (Old Beaunit) which is not a party to this action.

The trust indenture allegedly breached was executed on August 1, 1965 by Old Beaunit, the issuing corporation, and Hanover, the trustee. It provided for Old Beaunit to issue $25 million of 4¼% convertible subordinated debentures due August 1, 1990.

The plaintiff on September 3, 1965, purchased one certificate with face value of $2,000, representing two shares of these debentures. She still owns this certificate. She claims to sue on behalf of herself and others similarly situated who owned shares of the debentures prior to the public announcement on February 1, 1967 of the merger which gives rise to this action.

That merger was consummated on October 11, 1967 between Old Beaunit and a wholly-owned subsidiary of El Paso, the EPNG Corporation. The survivor, Beaunit, is now a subsidiary of El Paso.

Prior to the merger, the 4¼% debentures issued by Old Beaunit had been convertible into shares of Old Beaunit stock. The merger agreement and a supplemental indenture executed pursuant to it provided that the debentures should be convertible into shares of El Paso stock. It is this conversion provision of which the plaintiff complains.

The plaintiff alleges that the conversion of the debentures into stock, which would have been a non-taxable event if the debentures had been made convertible into Beaunit stock, is now a taxable event. Thus, gains or losses in the debentures' value must be recognized for tax purposes at the time of conversion and not deferred until the time the stock acquired by conversion is sold.

The plaintiff alleges that taxing gains or losses on stock at the time of conversion, when no cash is realized in the conversion transaction, is an undesirable feature to most investors. She alleges that the economic result of this change is a permanent reduction in the value of the debentures resulting in total damages of $2,500,000 to persons owning shares of the debentures at the time the merger was announced.

The plaintiff contends that by providing for the conversion of the debentures into shares of El Paso stock instead of into shares of Beaunit stock, Beaunit and El Paso violated § 13 of the original trust indenture, particularly § 13.02 which provides:

"In case of any such merger, consolidation, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Company, *with the same effect as if it had been named herein as the party of the first part.*" (Emphasis added)

The plaintiff also urges that Hanover, as trustee under the original and supplemental indentures, violated its fiduciary duties to the debenture holders by failing to object to this breach of the indenture and by participating in the improper substitution as a party to the supplemental indenture.

## I. PERSONAL JURISDICTION

El Paso has moved that service of process on it be quashed, and the action against it be dismissed for lack of jurisdiction over its person. It raises the issue whether El Paso has had sufficient contact with Wisconsin to furnish grounds satisfying the requirements of constitutional due process. See Wis. Stat. § 262.05, incorporated by rules 4(d) (7) and 4(e), Federal Rules of Civil Procedure.

The plaintiff contends that El Paso has had three contacts with Wisconsin which alone, or in combination, satisfy the requirements of due process. First, El Paso is said to have consciously caused Old Beaunit to break its contractual relations under the original trust indenture with its bondholders, some of whom El Paso knew, or should have known, are Wisconsin residents. Secondly, by entering into the merger agreement and supplemental indenture, it is urged that El Paso assumed a contractual relationship with the plaintiff and other persons whom El Paso knew, or should have known, are Wisconsin residents. Thirdly, El Paso, through independent underwriters, is charged with having entered Wisconsin to sell and solicit sales of one of its own security issues, unconnected with the issue of convertible debentures by Old Beaunit.

The plaintiff also argues that the intent of the Wisconsin legislature in adopting Wis.Stat. § 262.05 was to cover all constitutionally sufficient contacts; to accomplish this, the plaintiff urges that the court construe § 262.-05(4) to cover the three contacts together and § 262.05(1) (d) to cover the last two contacts.

El Paso admits that it is party to both the merger agreement and the supplemental indenture and that some Beaunit debenture holders are Wisconsin citizens. It also acknowledges that independent underwriters have registered and sold an issue of convertible securities in Wisconsin. However, it denies that each of these alleged contacts with Wisconsin, or any combination of them satisfies the requirements of Wis.Stat. § 262.05 or constitutional due process.

In relevant part, § 262.05(4) provides:

"A court of this state * * * has jurisdiction over a person * * * [i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury * * * [s]olicitation or service activities were carried on within this state by or on behalf of the defendant * * *."

■ I believe that the plaintiff's case meets the test of the foregoing. The allegations of the complaint show sufficient grounds for the exercise of personal jurisdiction over El Paso by Wisconsin courts under Wis.Stat. § 262.05(4), and that is consistent with due process. See cases cited at 30 W.S.A. § 262.05 and Pocket Parts.

## II. JURISDICTIONAL AMOUNT

The defendant, Beaunit, has brought a motion, in which other defendants join, to dismiss the action for failure to allege facts which support a claim for more than $10,000 as required by 28 U.S.C. § 1332. Beaunit contends that this is not a true class action, and that the plaintiff cannot aggregate her $2,000 claim with those of the persons whom she purports to represent.

Plaintiff maintains that her action is a true class action, but that if it is not, then she can properly aggregate her $2,000 claim with the total attorney's fees recoverable if her action is successful.

■ I believe that the plaintiff properly states a claim as a class action for damages. It is not necessary to the maintenance of a class suit that all members of the class have precisely the same interest, so long as their interests

be not antagonistic as to the subject matter of the suit. Redmond v. Commerce Trust Co., 144 F.2d 140, 151–152 (8th Cir.1944); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463–464 (E.D.Pa.1968). Though some of the debenture holders may sell the securities at different times and at different prices, if plaintiff can prove that the debentures went down permanently in value by some measurable amount, all persons in the purported class could be made whole by that amount.

■ I find that the plaintiff's claim is a "true" class action permitting aggregation of her claim with others of the class she purports to represent. A true class action is one in which the plaintiff and other members of the alleged class "unite to enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969).

Each member of the proposed class claims all his rights in the debentures through the same trust indenture. Allegedly, a single transaction involving all of the defendants to this action violated the term of the trust indenture, thereby damaging all members of the proposed class equally for each share he owned on the date, assuming it could be proved that there was a permanent reduction in the market price of each debenture.

The trust indenture in Article 8, Section 8.04, provides:

"* * * no one or more holders of Debentures shall have any right in any manner whatever by virtue of or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of any other holder of such Debentures, or to obtain or seek to obtain priority over or in preference to any other holder, or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all holders of Debentures."

I believe that the members of the purported class in the case at bar are seeking "to enforce a single title or right in which they have a common and undisputed interest." The recent decision of the United States Supreme Court in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053 (1969) does not compel a contrary result. There a shareholder sued on behalf of herself and others similarly situated alleging that majority shareholders had sold their control stock for more than the market value of the shares. Under the law of Missouri, the state of incorporation, such excess payment is recoverable by all other holders of the same class of stock. However, while a single transaction affected the rights of all the shareholders equally, the state law gave the right to recover to each shareholder individually. Since the right belongs to each shareholder individually, the suit is not to protect a joint interest. Other cases cited by the defendants are also distinguishable.

### III. MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Each defendant has moved to dismiss for failure to state a cause of action. The plaintiff and all defendants have moved for summary judgment. The court's ruling on the defendants' motions for summary judgment makes it unnecessary to discuss the other issues.

The plaintiff's case rests primarily upon paragraph thirteen of the original trust indenture. Section 13.01, entitled "Consolidation, Merger or Sale of Assets Permitted", provides in relevant part that

"The company covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, (i) unless either (a) the Company shall be the continuing corporation, or (b) the successor corporation (if other than the Company) shall be a corporation organized and existing under the laws

of the United States of America or a State thereof and such corporation [sic] shall expressly assume the due and punctual payment of the principal of (and premium, if any) and interest on all the Debentures, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Company by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation * * *."

This provision requires that the successor corporation will assume all of Old Beaunit's covenants and will execute a supplemental indenture to accomplish such assumption. In addition, section 13.02 provides that the successor to any merger must perform all of Old Beaunit's covenants:

"In case of any such merger, consolidation, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Company, with the same effect as it it had been named herein as the party of the first part."

The clause of the trust indenture which covers the matter of conversion rights upon a merger is § 5.10, entitled "Provision in Case of Consolidation or Merger". This section provides in part as follows:

"In case of any * * * merger of the Company into, any other corporation * * * the corporation into which the Company shall have been merged * * * shall execute and deliver to the Trustee a supplemental indenture providing that the holder of each Debenture then outstanding shall have the right thereafter * * * to convert such Debenture into the kind and amount of shares of stock and other securities and property receivable upon such * * * merger * * * by a holder of the number of shares of Common Stock of the Com-

pany into which such Debenture might have been converted immediately prior to such * * * merger".

The merger agreement provides that owners of Old Beaunit common stock will receive ⅘ of a share of El Paso stock in exchange for each share of Old Beaunit common stock they own. The supplemental indenture provides for the conversion of Old Beaunit debentures into El Paso shares. There is no challenge to the correctness of the amount of stock receivable upon conversion.

The plaintiff contends that the effect of providing for the exchange of Old Beaunit common stock and the conversion of Old Beaunit debentures into El Paso stock is to substitute El Paso, not Beaunit, for Old Beaunit and to make El Paso liable to carry out Old Beaunit's obligations under the trust indenture. The plaintiff argues that this is a violation of the obligations of section 13 of the trust indenture. The defendants maintain that § 5.10 permits the use of the stock or the property of another company for the conversion of the debentures.

The court must determine whether the provision for conversion of the debentures into El Paso stock is permitted by § 5.10 and, if so, whether § 5.10 should control § 13.

The language of § 5.10 implies that something other than Beaunit stock may be used in conversions following a merger. It provides that conversion may be "into the kind and amount of shares of stock and other securities *and property* * * *". (Emphasis added)

The plaintiff points out that this language had been contained in similar trust indentures prior to 1961 when New York law, which all parties agree controls this issue, did not permit corporations to provide for the use in mergers of stock of corporations which were not parties to the merger. The plaintiff concludes from this fact that the meaning of the language "shares of stock and

other securities and property" must be limited as it was under prior law. I am not persuaded by the latter argument. The words used in the indenture are broad, and they support the defendants' argument.

The plaintiff further contends that if § 5.10 and § 13 are deemed in conflict, the latter should control. The plaintiff urges that such a holding is necessary because an ambiguous contract should be construed against its draftsman, and that a contrary holding would permit the defendants to "freeze out" or otherwise injure a particular class of security holders, here the debenture holders.

 In my opinion, § 5.10 is specifically addressed to the question as to what items may be used for conversions following a merger, whereas § 13 deals only with the obligations of a successor to a merger generally. Specific provisions must control general ones. William Higgins & Sons, Inc. v. State, 20 N.Y.2d 425, 284 N.Y.S.2d 697, 231 N.E. 2d 285 (1967); Muzak Corporation v. Hotel Taft Corporation, 1 N.Y.2d 42, 150 N.Y.S.2d 171, 133 N.E.2d 688 (1956); Preminger v. Columbia Pictures Corporation, 49 Misc.2d 363, 267 N.Y.S.2d 594, affirmed 25 A.D.2d 830, 269 N.Y.S.2d 913, affirmed 18 N.Y.2d 659, 273 N.Y.S.2d 80, 219 N.E.2d 431 (1966).

The plaintiff also argues that El Paso, not Beaunit, should be treated as the true party to the trust indenture since the economic effect of the whole transaction is to make it the only real party. While Beaunit has no separate stockholders of its own, it is a corporation separate from El Paso. Markow v. Alcock, 356 F.2d 194 (5th Cir.1966); In re Gibraltor Amusements, Ltd., 291 F.2d 22 (2d Cir.1961); Berkey v. Third Avenue R. Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599 (1926); Lowendahl v. Baltimore & O. R. Co., 247 App.Div. 144, 287 N.Y.S. 62, affirmed 272 N.Y. 360, 6 N. E.2d 56 (1936), hearing denied 273 N.Y. 584, 7 N.E.2d 704 (1937). Only Beaunit, not El Paso, is made liable for "the due and punctual payment of the principal of (and premium, if any) and interest on all the debentures" (article II, section 1 of the supplemental indenture). Beaunit has a number of responsibilities as set forth, for example, in sections 5.-02, 5.03 and 5.08 of the supplemental indenture.

Can the court read into the terms of the original indenture a commitment to avoid any act which would affect the future tax impact? Taxes upon the subject matter of a contract may be changed at any time by either the federal or state governments without impairing the contract under article I, section 8 or the due process clause of the United States Constitution. In John McShain, Inc. v. District of Columbia, 92 U.S. App.D.C. 358, 205 F.2d 882, 883 (1953), the court observed:

> "The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise: seldom, if ever, does such an event impair the obligation of a pre-existing contract."

See also Barwise v. Sheppard, 299 U.S. 33, 40, 57 S.Ct. 70, 81 L.Ed. 23 (1936); Lake Superior Consol. Iron Mines v. Lord, 271 U.S. 577, 581, 46 S.Ct. 627, 70 L.Ed. 1093 (1925). In my opinion, an unalterable taxing commitment in the event of conversion was not within the reasonable contemplation of the parties at the time of drafting the trust indenture.

I conclude that the court should grant the defendants' motions for summary judgment. This conclusion is dispositive of the case, and the court will not rule on other motions of the parties.

Now, therefore, it is ordered that the defendants' motions for summary judgment be and hereby are granted. It is further ordered that the plaintiff's motion for summary judgment be and hereby is denied. It is further ordered that the complaint of the plaintiff be and hereby is dismissed.