Leonard WEISS, on his own behalf as a stockholder of Sunasco Incorporated and on behalf of all other stockholders similarly situated, Plaintiff,

v.

SUNASCO INCORPORATED (presently known as Scientific Resources Corporation), Kleiner, Bell & Co., Incorporated, Sunset International Petroleum Corporation, J. L. Wolgin, Sidney Wolgin, Norman Wolgin, Paul Hallingby, Jr., David H. Solms, Thomas T. Fleming, Wentworth P. Johnson, Defendants.

No. 68-1989.

United States District Court,
E. D. Pennsylvania.

Sept. 3, 1970.

See also D.C., 295 F.Supp. 824.

David Berger, Herbert B. Newberg, H. Laddie Montague, Jr., Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for Sunasco Incorporated, and others.

Ernest R. von Starck, Richard P. Brown, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Wentworth P. Johnson.

## OPINION AND ORDER

FULLAM, District Judge.

This case is presently before the Court on the defendants' motions to dismiss addressed to five counts of the plaintiff's six-count complaint. The defendants named in the respective counts of the complaint are listed in Appendix A hereto. Plaintiff is the owner of 100 of approximately 1,000,000 outstanding shares of Sunasco $1.65 preferred stock.

Before discussing the defendants' motions to dismiss, it is necessary to describe briefly the corporate transactions that give rise to the plaintiff's claim. Sunasco, a defendant corporation,[1] came into being as a result of the combination of Sunset International Petroleum Corporation and Atlas Credit Corporation in April of 1966. Sunset was operated as a wholly-owned subsidiary of Sunasco after the combination. However, in 1968, Sunasco with shareholder approval entered into an agreement with Commonwealth United Corporation [hereinafter CUC] to exchange Sunset for, among other things, 1,950,000 shares of CUC common.

In the proxy statement dated December 15, 1967, soliciting approval of the CUC transaction, Sunasco stated that it intended to offer 800,000 shares of CUC common stock to $1.65 preferred shareholders of Sunasco on a favorable exchange ratio so as to allow Sunasco $1.65 preferred shareholders to secure CUC common at 10 to 20% of its market price. On June 7, 1968, Sunasco entered into an agreement with Kleiner, Bell & Co. to

Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for plaintiff.

---

1. Since this action was filed, the corporate name has been changed to Scientific Resources Corporation. For convenience, the defendant corporation will be referred to as Sunasco.

sell 1,400,000 shares of CUC common to that firm at $8 per share. On August 28, 1968, as a result of the Kleiner, Bell transaction, Sunasco was able to offer only 382,500 shares of CUC common to $1.65 preferred shareholders on a five to two exchange basis. The response to the exchange offer was such that Sunasco could accept only 53% of the Sunasco stock tendered pursuant to the exchange offer.

As of August of 1968, Sunasco had not paid any $1.65 preferred dividends for the five preceding quarters. This resulted in an outstanding accumulation of preferred dividends of approximately $2 per share. Moreover, in August of 1968 there were $1.65 preferred warrants outstanding in the amount of 148,-679 shares. In December of 1968, Sunasco declared one of the past due preferred dividends of $.41 per share. On the record date for this dividend, 2,351 shares of Sunasco preferred had been acquired as the result of the exercise of Sunasco warrants. Although these warrants were exercised after the due date for the $.41 dividend declared in December 1968, the dividend was paid to the shareholders who had acquired their stock by the exercise of warrants prior to the record date.

The last transaction in question was the transfer of 197,235 shares of Sunasco common, plus the payment of $1,-000,000 to Sunset in consideration for satisfaction of outstanding Sunasco obligations to Sunset. Proxy statements describing the above transaction were distributed to Sunset shareholders, and the shareholders approved the transaction. The plaintiff contends the debt was overevaluated by $600,000.

### I

In Count I the named plaintiff in his own right and on behalf of all Sunasco $1.65 preferred shareholders similarly situated seeks redress for Sunasco's alleged breach of its undertaking in the proxy statement of December 15, 1967 to offer 800,000 shares of CUC common in exchange for Sunasco $1.65 preferred. Sunasco has moved to dismiss for lack of subject matter jurisdiction in that $10,000 is not in controversy.

Plaintiff's complaint and briefs contra Sunasco's Rule 12(b) (1) motion make it clear that the plaintiff does not contend that the requisite $10,000 would be in controversy if Count I of the complaint had been filed by the plaintiff individually and no other counts were alleged in the complaint. Consequently, unless the plaintiff can aggregate the claims of the other members of the class with his own, aggregate the claims in the other counts of the complaint to Count I, or establish pendent jurisdiction over this Count, Sunasco's motion must be granted.

In Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court held that federal diversity jurisdiction does not lie if the rights of the class members asserted are individual in nature, and the named plaintiff's claim does not exceed $10,000. Essentially, the Court in *Snyder* carried forward the jurisdictional doctrine applicable under the pre-1966 version of Rule 23. The long-established judicial doctrine is that for jurisdictional purposes the claims of class members can be aggregated only if the right asserted in the class action is a common undivided right of the class.

*Snyder* involved a shareholders' class action against a corporation's directors alleging that the directors had received a premium over the fair market value of their shares because the size of the block of stock traded effectively transferred control of the corporation to the purchaser of the stock. Under Missouri law, shareholders are entitled to a pro rata share of the premium received in such a transaction. By affirming the lower court's dismissal, the Court held that such a shareholders' class action seeks to redress only individual rights.

Plaintiff argues that *Snyder* is not controlling because the prayer for relief in Count I not only seeks damages sus-

tained by the class members, but also asks that the Kleiner, Bell transaction be declared null and void, that Sunasco specifically perform its original undertaking to offer *800,000 shares of CUC common to the $1.65 preferred shareholders of Sunasco,* and that the Court rescind the amendment to Sunasco's articles which reduced the liquidation preference of the $1.65 preferred shareholders by approximately $10,000,000. In sum, the plaintiff argues that since equitable relief is requested which would affect the class if granted, *Snyder* is not applicable.

■ Initially, it should be pointed out that the complaint is defective in its attempt to invoke equitable jurisdiction because no allegation is made that the available legal remedies are inadequate. More importantly, the proper focus is not the relief requested, but rather the right asserted. Lonnquist v. J. C. Penney Co., 421 F.2d 597 (10th Cir. 1970). Is the right asserted in Count I a right that can be asserted by individual members of the class, or is it a class right which does not give rise to causes of action by the individual class members? Berman v. Narragansett Racing Association, 414 F.2d 311 (1st Cir. 1969), a post-*Snyder* case, relied upon by the plaintiff, exemplifies the proper analysis. There the court held that the right asserted by the class plaintiffs was joint and undivided because the contract alleged was between the class of all racehorse owners who won during a specified period of time and the defendant track owners, and that the members of the class as such had no individual rights to sue on the alleged contract. *See also* Broenen v. Beaunit Corp., 305 F.Supp. 688 (E.D.Wisc.1969). In the present case, the proxy statement was sent to all shareholders of record, and to the extent that Sunasco's failure to perform the undertaking therein is actionable, each shareholder has an individual cause of action. Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); Pentland v. Dravo Corp., 152 F.2d 851 (3rd Cir. 1945); Booth v. Lemont Mfg. Co.,

304 F.Supp. 235 (N.D.Ill.1969); Lesch v. Chicago & Eastern Illinois Ry. Co., 279 F.Supp. 908 (N.D.Ill.1968).

■ Also, analysis of the equitable relief requested by the plaintiff reveals that the relief sought is merely a means of redressing the individual claims of the class members. For instance, if the Kleiner, Bell transaction were held to be null and void, Sunasco would be able to perform the alleged undertaking to offer 800,000 shares of CUC common to the preferred shareholders. However, this relates only to the individual shareholders' opportunity to exchange Sunasco $1.65 preferred for CUC common, and the shareholders' opportunity to make a profit on the transaction. Essentially, Count I seeks to reclaim the profit that would have been made by the shareholders had Sunasco performed its original undertaking. Equally, the reinstatement of the $1.65 liquidation preference to its prior level relates only to the individual shareholders' pro rata share upon liquidation. Thus, it is clear that the plaintiff cannot aggregate the respective claims of the members of the alleged class.

Plaintiff next contends that he can aggregate the amounts in controversy of the first count with the second count. The second count is a derivative shareholders' suit against the directors of Sunasco, Kleiner, Bell & Co. and Sunasco as a nominal defendant. The claim asserted is that the Kleiner, Bell transaction was the product of a conspiracy between the Sunasco directors and Kleiner, Bell to waste Sunasco's assets, to the benefit of Kleiner, Bell.

■ In Snyder v. Harris, *supra,* the Supreme Court recognized the traditional rule that the jurisdictional amount may be satisfied when a plaintiff seeks redress of two separate claims against one defendant. 394 U.S. at 335, 89 S.Ct. 1053. Obviously, Counts one and two differ in that the defendants in each count are different, and although the named plaintiff is the same, Mr. Weiss sues to redress a corporate right

in Count II through the procedural device of Rule 23.1; whereas he sues in his own right to redress a breach of a duty owed to him personally in Count I. Plaintiff's citations relating to the proposition that one act of a particular corporate director or directors may constitute a breach of a duty owed the shareholders individually and a duty owed the corporation are inapposite in the present case. It is true that the shareholders may sue in their own right and also sue derivatively in one cause of action. However, no case has been found which supports a rule that the amount in controversy in a class action by shareholders and in a derivative action can be aggregated. *See* Wright, Law of Federal Courts, 121 § 36 (2d Ed. 170).

■ Even if one gives the exception to the no-aggregation rule a liberal reading, there is no justification for allowing the aggregation of an individual shareholder's claim and that of the corporation. Just as the new class action rule did not expand existing jurisdictional rules, Snyder v. Harris, *supra,* so also Rule 23.1 by allowing an individual to bring a derivative action on behalf of the corporation did not in any way change what is fundamentally a corporate cause of action, into a personal cause of action of the shareholder plaintiff.

■ Finally, plaintiff invokes the doctrine of pendent jurisdiction to support this Court's jurisdiction over Count I. Although it has been argued that the doctrine of pendent jurisdiction is applicable only when a state claim is found to be pendent to a federally created cause of action, Oliveri v. Adams, 280 F.Supp. 428 (E.D.Pa.1968), the Third Circuit has held on three occasions that a diversity claim may be pendent to another diversity claim properly brought in the federal system. Borror v. Sharon Steel Co., 327 F.2d 165 (3d Cir. 1964); Wilson v. American Chain & Cable Co., Inc., 364 F.2d 558 (3d Cir. 1966); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3d Cir. 1968).

In *Borror* the Court held that if federal diversity jurisdiction properly exists over a Pennsylvania survival action, the doctrine of pendent jurisdiction is applicable to the wrongful death action brought by the decedent's personal representative. Chief Judge Biggs, writing for the Court, emphasized the fact that the two actions are complementary, that is, both actions arise from the same tortious conduct of the defendant toward the decedent. Similarly, in *Wilson,* the Court held that a father's claim for medical expenses occasioned by the tortious injury of his son was pendent to the son's action brought by his father for the injuries inflicted on the son. In both cases, one tortious act gave rise to two causes of action, but because these causes of action redress a single wrong, the Court held that pendent jurisdiction was applicable.

*Jacobson* involved only a single plaintiff asserting claims against two doctors and a hospital for malpractice. The court there held that the claim against the hospital was pendent to the claim against one of the doctors because the facts giving rise to both claims were so intertwined as to lead the court to consider the action against the doctor and the action against the hospital as one action for the purposes of establishing the jurisdictional amount. Again, the court emphasized the fact that the action was brought to redress a single injury to a particular person and that the coupled claims involved the same operative facts.

Although general principles can be extracted from the *Borror* trilogy, the present case goes beyond the respective holdings of these cases. For instance, the plaintiff argues that *Wilson* stands for the proposition that an individual claim (the father's claim for medical expenses) can be pendent to a representative claim brought by the same plaintiff (the father's suit for the injured minor). However, the court in *Wilson* focused on the fact that both causes of action arose out of a single wrong and that under Pennsylvania law both claims

were to be redressed in one action. In the present case, Counts I and II do not seek redress for one wrongful act, but for two wrongful acts, i. e., breach of the exchange undertaking and waste of corporate assets.

Likewise, although *Jacobson* held that the plaintiff's claim against one defendant was pendent to the plaintiff's claim against another defendant, in the instant case there are two distinct plaintiffs instead of one and different defendants in each case. Again, *Jacobson* focused on the fact that the action against multiple defendants was to redress a single injury to one person, whereas in this case there are two injuries arising from separate facts.

On the other hand, it must be recognized that Counts I and II are related factually to the extent that the Kleiner, Bell transaction reduced Sunasco's holdings in CUC, and that as a consequence the amount of stock available for the performance for the exchange offer was reduced. However, the interrelationship of Counts I and II is appreciably different from that found in the *Borror* trilogy cases, because in the trilogy cases the alleged tortious actions were inflicted on one person, although more than one cause of action arose from that conduct. On the contrary, in this action two separate entities have allegedly had their independent legal rights violated, the rights of the shareholder and the rights of the corporation.

I have accordingly concluded that the defendants' motion pursuant to Rule 12 (b) (1) should be granted.

II

The third count of the complaint alleges that Sunasco has paid and will pay in the future accumulated preferred quarterly dividends to holders of $1.65 preferred stock even though the stock was acquired after the due date of the dividends. Plaintiff contends that the directors' action in authorizing such payments was *ultra vires* and constitutes waste of corporate assets. Defendants

have moved to dismiss this count because the amount in controversy does not exceed $10,000.

As of August 27, 1968, there were warrants outstanding entitling the holders thereof to purchase an aggregate of 148,679 shares of $1.65 preferred stock. The quarterly preferred dividend of $.41¼ per share had been omitted for five consecutive quarters beginning July 1, 1967. Consequently, there was an arrearage of $2.06 per share. In August of 1968, management determined, and so stated in a prospectus relating to the registration of certain warrants, that although Sunasco was not contractually obligated under the warrants to pay prior accumulated, but yet undeclared, quarterly dividends, Sunasco would pay such dividends to those who had exercised their warrants by the record date of the dividend declaration. The prospectus also stated that this decision was revocable.

In December of 1968, the first of the five omitted dividends was declared. As of the record date, there were 2,351 shares issued pursuant to the exercise of warrants. Therefore, Sunasco paid $969.78 in previously accumulated dividends to holders of these shares. The remaining four dividends have not yet been declared. As of September of 1969, there were a total of 4,792 shares issued pursuant to warrants. In the absence of a revocation of the August 1968 decision, these shareholders would be entitled to the four omitted dividends when declared. The potential total payments to holders of $1.65 preferred stock through the exercise of warrants would be $8,876.58. Of course, if additional warrants were exercised before the declaration of any of the still outstanding dividends, the payments would be increased commensurately.

It is the plaintiff's contention that the amount in controversy is $306,650.00. This figure is arrived at by multiplying the total five-quarter arrearage of approximately $2.00 by 148,679, the number of shares that can potentially be acquired by the exercise of outstanding

warrants. By the terms of management's decision, the warrants have to be exercised by the record date for a dividend declaration, and therefore, since one quarterly dividend has already been declared, even under the plaintiff's theory, the current potential is approximately $250,000.00. On the other hand, defendants argue that the present controversy is limited to the $969.78 already paid out, or, at the most, the potential total payments of $8,876.58.

The long established rule to be applied is that the sum claimed by the plaintiff is controlling for jurisdictional purposes if made in good faith, unless as a matter of law recovery cannot exceed the $10,000.00 in controversy. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Thus, the issue simply is whether or not as a matter of law on the facts as revealed by the record it is possible that the plaintiff could secure an award in excess of $10,000.00.

In Aetna Casualty Co. v. Flowers, 330 U.S. 464, 67 S.Ct. 798, 91 L.Ed. 1024 (1947), the court dealt with a variant of the classic jurisdictional problem of installment payments. The action was brought by a decedent's survivors for workmen's compensation death benefits for the maximum allowed under the applicable statute of $5,000.00. Under Tennessee law, the lump sum award was payable in weekly payments, subject to termination if the wife died and the surviving children reached their majority. The court rejected the argument that merely because it was possible that the full $5,000.00 would not be paid the then applicable jurisdictional amount of $3,-000.00 was not satisfied. On the contrary, the court held that the jurisdictional amount was satisfied because the potential judgment could exceed the statutory minimum, and it was irrelevant that the full amount of the award might not be paid.

Applying the "amount of judgment" test to the present case, it is perfectly clear that the judgment could not exceed $10,000.00. However, the plaintiff also seeks an injunction precluding Sunasco from paying past due preferred dividends to any shareholder who has acquired or in the future acquires stock by the exercise of Sunasco warrants. The traditional rule is that the amount in controversy in an injunction action is measured by the value of the right sought to be protected. Hedberg v. State Farm Mutual, 350 F.2d 924 (8th Cir. 1965) [and cases cited therein].

Accepting this principle, the defense argues that the value of the right sought to be protected is too speculative to sustain jurisdiction. This argument is based on the fact that the management decision to pay the past due dividends is revocable; the warrants may not be exercised; and the fact that even if the warrants are exercised the $1.65 preferred stock which is acquired may be converted into common stock. The existence of the above-mentioned contingencies does not necessitate a conclusion that the jurisdictional amount is not satisfied. The amount in controversy is determined by the potential value of the corporate right sought to be protected at the time of the filing of the action. Under that standard, the amount in controversy does exceed $10,000.00.

The defendant's theory cannot stand analysis. In any injunction action, it is always possible that in the future the alleged wrongdoing will voluntarily be terminated. However, if the defense theory were correct, injunction actions could not be brought until a plaintiff had suffered the full potential injury resultant from a defendant's course of conduct. Access to a Federal court for injunctive relief obviously should not be withheld until an injunction would be virtually useless.

One technical problem remains. The complaint does not allege the prerequisites necessary to invoke the equitable jurisdiction of this court. Since this pleading defect can be cured by amendment, I will deny the defendant's motion to dismiss on the condition that the com-

plaint be amended within twenty (20) days.

### III

Plaintiff's fourth count is based on Section 14(a) of the Securities Act of 1934. 15 U.S.C. § 78n(a). In a prior action in the Southern District of New York, Weiss v. Sunasco, Inc., 295 F.Supp. 824 (S.D.N.Y.1969), Judge Mansfield held that a similar pleading did not state a cause of action under section 14 (a). Although the plaintiff was granted leave to amend the complaint, he chose not to, and filed the present action in this district.

Essentially, the issue is whether paragraph 61 of the present complaint, a new addition, cures the pleading defect pointed out by Judge Mansfield. I am satisfied it does. Furthermore, since the present motion was argued, the Supreme Court has decided Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Count four of the present complaint appears to be within the standards articulated by Mr. Justice Harlan for alleging the necessary causal relationship to state a cause of action under section 14(a). In reaching this conclusion, I am mindful that *Mills* can be distinguished on the basis that in *Mills* the plaintiff was attacking a merger approved by the shareholders, whereas in the present case it can be said that the transaction approved by the shareholders, i.e., the issuance of shares of stock to Sunset, was irrelevant, because the fundamental wrong complained of is the overevaluation of Sunasco's debt to Sunset. However, just as in *Mills*, the completed corporate transaction involved, i.e., the issuance of the stock to Sunset as partial compensation, could not have been effectuated without shareholder approval. *Mills* subsumes the argument pressed before Judge Mansfield that if the corporate transaction could have been carried out by some other method without shareholder approval, a section 14(a) claim has not been made out. As I understand *Mills*, the proper test is whether the proxy solicitation is "an essential link in the accomplishment of the transaction" giving rise to the litigation, irrespective of the fact that other possibilities were available to management.

The defendants also argue that the language of the proxy statement, which is allegedly false and misleading, is not false and misleading as a matter of law. I have some doubt that such a contention is properly raised by a motion under Fed. R.Civ.P. 12(b) (6). Moreover, the plaintiff, apparently by oversight, has failed to discuss this issue in his brief. Under the circumstances, it seems appropriate to deny the defendants' motion to dismiss without prejudice to their raising this contention by a motion under Rule 12(c) or Rule 56.

### IV

Counts II through V are derivative actions brought pursuant to Fed.R.Civ.P. 23.1. In all but Count IV, which is pleaded as a federal claim, common law actions against various Sunasco directors for breach of their fiduciary duties are asserted.

Defendants seek to have these counts dismissed for failure to comply with the pre-suit requirements of rule 23.1:

> "The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors * * * and if necessary, from the shareholders * * * and the reasons * * * for not making the effort."

No claim is made by the defendants that it was necessary for the plaintiff to make a demand upon the directors, apparently because the allegations of the complaint are directed to their alleged wrongdoings; however, the defendants do contend that the plaintiff's action must be dismissed because no attempt was made to seek redress through shareholder action.

Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827 (1881) is the source of the principle now embodied in rule 23.1. In that case, the court reasoned that the requirement of resort to the

shareholders was necessary to guard against circumvention of diversity standards.

More recently, further considerations have been suggested. In Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S. Ct. 845, 15 L.Ed.2d 807 (1961), the Supreme Court stated:

> "Rule 23(b) [the pre-1966 version of rule 23.1] was not written in order to bar derivative suits. Unquestionably it was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them. On the other hand, however, derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interest in order to enrich themselves." 383 U.S. at 371, 86 S.Ct. at 850.

Another suggested policy basis for the rule 23.1 requirements of exhaustion of intra-corporate remedies is that amicable resolution of differences will be fostered by requiring resort to the corporation in the first instance.

In the present case, the parties agree that the acts alleged in the complaint could not be ratified by the shareholders. Thus two issues are presented: as a general rule is it necessary to seek shareholder action if the acts alleged are non-ratifiable; and if this is the general rule, is the present plaintiff excused from it. Various federal courts have considered similar questions, but no clear rule has emerged.

In Abraham v. Parkins, 36 F.Supp. 238 (W.D.Pa.1940), the Court squarely held that even if the alleged actions of the corporate directors were non-ratifiable, a derivative shareholders' suit could not be brought unless a good-faith effort had been made to enlist the support of the shareholders to replace the incumbent directors and thereafter to have the corporation institute suit. It is interesting to note that Abraham relied on the original rationale of Hawes. Quirke v. St. Louis-San Francisco Ry. Co., 277 F.2d 705 (8th Cir. 1960), and the cases cited therein, although presenting somewhat different factual situations, also support the defendants' view.

■ Assuming arguendo that Abraham is still sound in principle, the question remains whether the plaintiff should be excused from seeking shareholder action on the present facts. It is clear that where the number of shareholders is small or one shareholder controls a majority of the stock, it is necessary to seek relief via shareholder action. Halprin v. Babbitt, 303 F.2d 138 (1st Cir. 1966). Conversely, where a majority interest is held by the directors named as defendants in the action, no demand need be made because it would obviously be futile. Treves v. Servel, Inc., 244 F.Supp. 773 (S.D.N.Y.1965). The present action falls into neither of these categories. As of July 26, 1968 (the most recent information in the record), there were 3,666,985 voting shares of Sunasco outstanding. There is no information in the record relating to the number of individual shareholders owning Sunasco stock, other than the fact that two defendants, Messrs. J. L. and Norman Wolgin, together own 7.5% of the eligible votes.

In Abraham and Quirke the courts rejected as insufficient the plaintiff's pleadings, similar to the allegations in the present case, that resort to the shareholders would be impracticable and unduly burdensome because of the number of shares outstanding and the difficulty in communicating with shareholders. However, three more recent cases from other circuits have taken a view which is more receptive to the plaintiff's claims.

Meltzer v. Atlantic Research Corp., 330 F.2d 946 (2nd Cir. 1964) can be read as holding that a shareholder is excused from seeking shareholder action when it is not feasible because of the large number of shares outstanding. However, in Meltzer the defendant directors owned

40% of the voting stock, and, therefore, *Meltzer* can be characterized as an example of the accepted rule that shareholder action need not be sought where it would be futile.

The strongest support for the plaintiff's position is Levitt v. Johnson, 334 F.2d 815 (1st Cir. 1964). There the Court clearly stated that in the case of a publicly-owned corporation with 48,000 shareholders it was not necessary to seek prior shareholder action before institution of a derivative shareholders' suit. It is true, as the defendants point out, that the case was brought under federal law and not state law. However, the significance of this distinction is not apparent.

Finally, the Second Circuit's opinion in Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959) should be noted. Although the Court's discussion or Rule 23(b) was technically dictum, the Court did express the view that a plaintiff is not required to seek prior shareholder action if the named defendant owns a substantial, but not necessarily controlling, portion of the stock, and the remaining shareholders are numerous and widely dispersed throughout the nation. However, the reasoning of this case is of further import because of its emphasis on the practical likelihood of achieving the remedy sought, e.g., replacing the directors, as a decisive factor.

 In my view, the same practical approach is appropriate here. In determining whether or not the policies underlying Rule 23.1 will be served, and whether it is reasonable to require resort to shareholder action prior to the institution of suit, it is important to consider the type of intra-corporate remedy available. For instance, in this case even if the board of directors were to be replaced, the cause of action against the ousted directors would presumably then be pursued by the corporation. There would still be a lawsuit pending against the named defendants in this case. Moreover, the history of this litigation demonstrates the unlikelihood that any form of

intra-corporate remedy would be achieved.

The defendants cite Rogers v. American Can Co., 305 F.2d 297 (3d Cir. 1962). Certainly, that case does reiterate the general rule that shareholder action should be sought in the first instance. Interestingly enough, the holding of *Rogers* was that if the shareholders refuse to take action, thereby impliedly ratifying the alleged acts of the directors, the derivative shareholder suit is not precluded. The Third Circuit did not have occasion to consider under what circumstances it would be unreasonable to require a shareholder to seek prior shareholder action.

 Having in mind the expense and effort necessary to bring the issues raised in this action before the shareholders of a publicly held corporation of this size, the difficulties inherent in any attempt to replace an incumbent board, and the unlikelihood of intra-corporate settlement, I have concluded that it would be unreasonable to require resort to the shareholders as a condition precedent to this derivative action. As the Supreme Court pointed out in Delaware & Hudson Co. v. Albany and Susquehanna Railroad Co., 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862 (1909):

> "Rule 94 [a predecessor of the present rule 23.1] is intended to have practical operation, and to have that it must, as to its requirements, be given such play as to fit the condition of different cases."

## IV

Finally, the defendants ask this Court to require the plaintiff to post security under Section 516, subd. B of the Pennsylvania Business Corporation Law, 15 Pa.Stat.Ann. § 1516, subd. B, as to Counts II, III, and V, and security for court costs under Local Rule 35 as to Counts I and IV. Plaintiff has filed a cross motion for production of Sunasco's shareholder list.

Section 516 vests in the Court the discretion to excuse the posting of securi-

ty for defense expenses when it is adequately demonstrated that the posting of security will place an undue hardship on the plaintiff and serious injustice would result. On the present record, I have concluded that the plaintiff should be required to enter security in the sum of $5,000 and that the defendants' motion under Local Rule 35 should be denied; as to both motions, this is without prejudice to renewed applications as the case develops.

Since the dismissal of Count I of the complaint obviates the problem of claim solicitation to some extent, Sunasco will be required to make its shareholder list available to the plaintiff for inspection or copying within twenty (20) days.

### ORDER

And now, this 3rd day of September, 1970, it is ordered

(1) That the defense motions to dismiss Count I of the complaint for lack of subject matter jurisdiction are granted.

(2) That the defense motions to dismiss Count III of the complaint for lack of subject matter jurisdiction are denied. Plaintiff is granted twenty (20) days to amend Count III of the complaint in accord with this opinion.

(3) That the defense motions to dismiss Count IV of the complaint for failure to state a cause of action are denied.

(4) That the defense motions to dismiss Counts II, III, IV, and V, of the complaint for failure to comply with Fed.R.Civ.P. 23.1 are denied.

(5) That the defendant Sunasco shall produce its shareholder list and make it available for copying within twenty (20) days of this order.

(6) That pursuant to 15 Pa.Stat.Ann. § 1516, subd. B, the plaintiff shall post security in the sum of $5,000 within 60 days of this order.

### APPENDIX A

#### Count I

Weiss individually and on behalf of all owners of $1.65 Sunasco Preferred v. SUNASCO, INC.

---

#### Count II

Weiss derivatively on behalf of Sunasco v.

SUNASCO, INC.
KLEINER, BELL & CO., INC.
J. L. WOLGIN
SIDNEY WOLGIN
NORMAN WOLGIN
DAVID H. SOLMS
THOMAS T. FLEMING
WENTWORTH P. JOHNSON

---

#### Count III

Weiss derivatively on behalf of Sunasco v.

SUNASCO, INC.
J. L. WOLGIN
SIDNEY WOLGIN
NORMAN WOLGIN
DAVID H. SOLMS
THOMAS T. FLEMING
WENTWORTH P. JOHNSON

Count IV

Weiss derivatively on
behalf of Sunasco

v.

SUNASCO, INC.
SUNSET INTERNATIONAL
 PETROLEUM CORPORATION
J. L. WOLGIN
SIDNEY WOLGIN
NORMAN WOLGIN
DAVID H. SOLMS
PAUL HALLINGBY, JR.

---

Count V

Weiss derivatively on
behalf of Sunasco

v.

SUNASCO, INC.
SUNSET INTERNATIONAL
 PETROLEUM CORPORATION
J. L. WOLGIN
SIDNEY WOLGIN
NORMAN WOLGIN
DAVID H. SOLMS

---

Count VI

Weiss derivatively on
behalf of Sunasco

v.

SUNSET INTERNATIONAL
 PETROLEUM CORPORATION