CASS CLAY, INC., on behalf of himself
and all others similarly situated,
Plaintiff,

v.

NORTHWESTERN PUBLIC SERVICE
COMPANY, a Delaware Corporation,
Defendant.

No. Civ. 73-4062.

United States District Court,
D. South Dakota, S. D.

April 26, 1974.

Joe L. Maynes, Maynes, Tonner &
Maynes, Aberdeen, S. D., for plaintiff.

F. M. Smith, Woods, Fuller, Shultz &
Smith, Sioux Falls, S. D., John B.
Wehde, Benson, Beach, Fingerson &
Wehde, Huron, S. D., and Warren W.
May, Martens, Goldsmith, May, Porter &
Adam, Pierre, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This class action was brought by electric consumers against a power company for rate overcharges which, plaintiffs allege, were in breach of a statute and in violation of a municipal ordinance. The defendant's Motion to Dismiss presents the issue of whether those members of the class whose individual claims do not meet the $10,000 jurisdictional minimum can aggregate their claims and thus acquire access to the federal forum.

The named plaintiff, Cass Clay, Inc., which is incorporated and has its principal place of business in North Dakota, brings this class action, on its own behalf and on behalf of all consumers who bought electricity from the defendant subsequent to the date of the alleged contractual and statutory infractions, against Northwestern Public Service

Company, a Delaware corporation having its principal place of business in a state other than North Dakota. Plaintiff prays for declaratory and compensatory relief on the following grounds: (1) that the defendant breached a contract with the United States Government, Bureau of Reclamation, which required defendant to pass to its customers all savings derived from purchasing electricity from the Government (plaintiff claims to be a third party beneficiary of that contract); (2) that defendant's rate increases have been in violation of municipal ordinances of the City of Aberdeen, South Dakota; and, (3) that defendant has collected monies from its customers to be used to pay income taxes and, when favorable changes in federal tax law reduced that payment and resulted in substantial credits and refunds, defendant refused to pass that savings on to its customers. Plaintiffs also seek punitive relief in the amount of $1,000,000.

The named plaintiff, Cass Clay, Inc., in an amended complaint, alleged that it was damaged in excess of $10,000. Nowhere is it alleged, however, that the claim of each individual class member exceeds that amount. Prior to Zahn et al. v. International Paper Company, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), there was a division among the circuits as to whether unnamed plaintiffs, whose separate individual claims did not meet the jurisdictional minimum, could ride the jurisdictional coattails of a named plaintiff whose claim did meet that minimum, by resort to the doctrine of ancillary jurisdiction.[1] The Supreme Court of the United States, in Zahn, resolved the conflict in favor of those circuits which refused to allow those class members to remain in the lawsuit. Zahn, following the dictates of Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), made the jurisdictional fate of those unnamed class members dependent upon whether the claims of the individual class members were "separate and distinct" or "common and undivided". If the claims are common and undivided, aggregation would be permitted.

First, I think it should be pointed out what the issue is *not*. The issue is not whether the class action is maintainable under 23(b)(1), nor is the issue whether the class members are indispensable parties. The fact that this action is maintainable as a 23(b)(1) class action or that all the class members are indispensable parties does not *necessarily* mean that the claims are separate and distinct. A decision that it is maintainable as such and that the class members are indispensable parties, however, would obviously buttress any conclusion that the claims are common and undivided. On the basis of the following analysis, I conclude that: (1) this action is maintainable under Rule 23(b)(1) of the Federal Rules of Civil Procedure; (2) all customers of Northwestern Public Service Company during the periods in question are indispensable parties to this lawsuit; and (3) the interests of those customers in the subject matter of this lawsuit are joint, common and undivided.

■ One of the alternative requirements for maintainability under 23(b)(1) is the following:

An action may be maintained as a class action if . . .

---

1. Holding that the doctrine of ancillary jurisdiction does not support the retention of jurisdiction over those whose claims do not meet the minimum are the following cases: Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969); Aetna Insurance Co. v. Chicago, R.I. and P.R. Co., 229 F.2d 584 (10th Cir. 1956); Jewell v. Grain Dealers Mutual Insur. Co., 290 F.2d 11 (5th Cir. 1961);

Hackner v. Guaranty Trust Co. of New York, 117 F.2d 95 (2d Cir. 1941). Holding that the doctrine of ancillary jurisdiction does support that retention are the following cases: Hatridge v. Aetna Casualty and Surety Co., 415 F.2d 809 (8th Cir. 1969); Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3d Cir. 1968).

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

   (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

In view of the fact that Cass Clay is claiming damages in excess of $10,000, I think it can be concluded that it would be worthwhile for other volume utility users to bring suit, thus creating the risk of separate individual actions. In their treatise, Wright and Miller point out that, where all of the class members are seeking payment from a single fund, the risk of "inconsistent adjudications . . . establish(ing) incompatible standards" becomes more imminent.[2] In a footnote, the two scholars utilize a case with which I will later deal at greater length, to elaborate their reasoning:

   Despite this broad language, the court's decision (in Berman v. Narragansett, 414 F.2d 311 (1st Cir. 1969)) appears to be based on its concern that any damage recovery would be distributed from a single fund and separate adjudications might require defendant to follow inconsistent distribution plans, which is precisely what subdivision (b)(1)(A) is designed to protect against. Wright and Miller, Federal Practice and Procedure, Sec. 1773, pp. 9, 10, n. 83.

There is no doubt that a decision in this case is going to require some kind of a distribution plan. The content of that plan will depend upon a number of variables: the number of subscribers during the periods in question; the time periods over which they subscribed; the amounts purchased by each subscriber. It would seem that a number of adjudications would present the risk of a number of distribution plans, and that the action should be maintainable under 23(b)(1)(A).

The second alternative requirement for maintainability under 23(b)(1) is the following:

An action may be maintained as a class action if . . .

   (1) the prosecution of separate actions by or against individual members of the class would create a risk of
   (A) . . .
   (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; . . .

Commenting upon this requirement, Wright and Miller state:

   Notably, the rule does not require that the individual adjudications be legally binding on the absentees; it simply states that separate actions "as a practical matter" would affect the absent parties without giving them the protection of representation in the action. Wright and Miller, Fed.Pr. and Proc. Sec. 1774, p. 14.

Applying that requirement to the common fund situation, they state:

   An obvious example of the type of action to which Rule 23(b)(1)(B) is ap-

---

2. "Once the court determines that there is a risk of separate individual actions, it must consider whether allowing the members to proceed on their own will expose the party to a serious risk of being put into a 'conflicted position.' It has been suggested that this requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts, as typically would be the case in the mass disaster situation. This might be sufficient to qualify under the rule, however, if all of the class members were seeking payment from a single fund." Wright and Miller, Federal Practice and Procedure, Sec. 1773, pp. 8–9.

plicable is one in which the class members have claims against a fund that may prove insufficient to satisfy all of them. As was stated by the commentator: "The individual suits could exhaust the fund before all members of the class were able to protect their interests. A class action allows the final determination of all the claims of the members of the class and subsequently the separate proof of the amount of each claim and its pro rata share of the fund. Thus the thrust of clause (B) is the protection of the rights of members of a class by ensured representation through the vehicle of a class action." Comment, Rule 23: Categories of Subsection (b), in the Class Action—A Symposium, 1969, 10 B.C.Ind. and Comm.L.Rev. 539, 541. The availability of an action under subdivision (b)(1)(B) in this context not only is fair to all members of the class but it eliminates a serious threat of multiple litigation. Wright and Miller, Sec. 1774, at 15.

If the defendant prevailed, and this forum was denied to the class members with claims of less than $10,000, their rights could be seriously affected. If Cass Clay remained in federal court and succeeded in obtaining a judgment, a distribution plan would have to be formulated. In order to determine how much is due and owing to Cass Clay, this court would have to determine how much was due and owing to each individual class member. The fund is a constant, and each individual class member's share is dependent upon the share owing to every other class member. Thus, if Cass Clay were awarded a judgment, the amount owed to each absent class member would necessarily be determined in the process. If the judgment to Cass Clay exceeded what it should have been, the share of each individual class member would be diminished accordingly. It would thus appear that this class action is maintainable under 23(b)(1)(B).

Fed.R.Civ.Proc. 19(b) sets forth four factors to be considered when determining whether a party is an indispensable party:

The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

It has already been concluded that an adjudication in the absence of some of the class members could affect their rights, and I can see no possibility of shaping the relief or of using protective provisions to lessen that prejudice. I do not think a judgment rendered in the absence of some of the class members will be adequate because it could leave open the possibility of future suits against Cass Clay, if it should happen that the judgment inflated its share of the fund. The class members do, however, have a remedy in state court if their claims are dismissed, since South Dakota has adopted the same class action rule as pertains to federal actions. Weighing these factors, I think those class members are indispensable, according to the rule. Case law would also seem to support the proposition that all persons having conflicting claims to a particular fund are indispensable parties to its disposition. Johnson v. Middleton, 175 F.2d 535 (7th Cir. 1949); Boris v. Moore, 152 F.Supp. 602 (E.D.Wis.1957); New England Mutual Life Ins. Co. v. Brandenburg et al., 8 F.R.D., 151 (S.D.N.Y.1948).

In support of aggregation, plaintiff primarily relies on the case of Berman v. Narragansett, 414 F.2d 311 (1st Cir. 1969). In that case, the plaintiffs were

horse-owners who raced their horses at the defendant's racetracks. Contracts had been negotiated between each track and the Horseman's Benevolent and Protective Association, agent for the horse-owners, whereby each track agreed to pay 44.7% of its annual share to the group of owners whose horses won purses. The trackowners never interpreted the agreement to encompass the "breakage."[3] The horse-owners maintained that it did include that breakage, and sued in federal court. No single horseowner claimed damages in excess of $10,000 and, for that reason, aggregation was the only answer to the jurisdictional amount requirement. The court held that the plaintiffs could aggregate in that their interests were joint and common. The court noted that a formula would have to be established before a distribution could be made of the fund, and that a damage award to the named plaintiff would affect any subsequent damage awards to unnamed class members. The higher the award to the named plaintiff, the lower would be the award to the unnamed plaintiffs—because the fund is a constant. Thus, to give relief to the named plaintiff, reasoned the court, would, as both a legal and a practical matter, affect the rights of the unnamed plaintiffs.

Plaintiff's reliance appears well-placed. The two cases are analogous. The plaintiffs in the instant case are utility users. A contract had been negotiated between the Government and Northwestern Public Service Company whereby N.W.P.S. would pay to its customers all the money it saved by purchasing its electricity from the Government. The customers maintain that this amount was not passed on. As in *Berman*, the existence of the "fund" and the amount of the fund are the points of contention, and eventual distribution is ancillary. In the instant case, as in *Ber-*

*man,* a formula must be established before the members of the class can benefit individually. If Cass Clay were to proceed alone and emerge victorious, its share of the spoils could not be determined without determining the share of every electric consumer during every period in question.

As *Berman* has been interpreted by later courts, the pivotal fact was that the contract created no specific rights in any individual horse-owner. The agreement provided that the tracks would pay 44.7% of its share of the money wagered to the horse-owner-winners *as a group*. The question of whether or not plaintiffs possess a common interest was thus dependent upon whether the interest invaded belonged *exclusively* to the group. In other words, if individual members of the class could not as a matter of law bring suit other than in a representative capacity, then the interests were common and undivided. At least five cases have pointed to that fact as the pivotal fact in *Berman:* 27 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers Agriculture Association, Inc. et al., 352 F.Supp. 986 (D.Conn.1973); Weiss v. Sunasco, Inc., 316 F.Supp. 1197 (E.D.Pa.1970); Broenen v. Beaunit Corp., 305 F.Supp. 688 (E.D.Wis.1969); Sherman v. H. and R. Block, Inc., 354 F.Supp. 1405 (E.D.Pa. 1973); Cashman v. Port of New York Authority, 319 F.Supp. 1264 (S.D.N.Y. 1970). Even though the contract in the instant case does not explicitly vest the interest in the group of customers, where the customers are indispensable parties, as this court has concluded them to be, the *effect* of the contract is to vest the interest in the group or a representative thereof.

There is one case, a fairly important case, which seemingly argues against aggregation—Snyder v. Harris, *supra*. In *Snyder*, a suit was brought by a

---

3. When money taken in at the betting windows is divided among the winners, each winner's share is rounded off to the next lowest dime. The amount thus eliminated is the breakage.

shareholder of an insurance company against that company's board of directors alleging that the amount the directors received in excess of the fair market value pursuant to the sale of their stock was the property of all of the shareholders instead of the directors only, since the directors had sold a corporate asset—"control" of the corporation. This was a "common Fund" case (the fund constituting the excess over fair market value) and is closely analogous to the instant case. The court treated this as a separate and distinct claim, and refused to permit aggregation.

I think *Snyder* can be distinguished, however. First, the plaintiff was statutorily empowered to sue without joining the group of shareholders, as was pointed out in Broenen v. Beaunit Corp., *supra:*

> There (in *Snyder*) a shareholder sued on behalf of herself and others similarly situated alleging that majority shareholders had sold their control stock for more than the market value of the shares. Under the law of Missouri, the state of incorporation, such excess payment is recoverable by all other holders of the same class of stock. However, while a single transaction affected the rights of all the shareholders equally, the state law gave the right to recover to each shareholder individually. Since the right belongs to each shareholder individually, the suit is not to protect a joint interest. *Id.* at 692.

Second, I do not think Mrs. Snyder would be classified as an indispensable party under Rule 19. Once a judgment was recovered, the plan of distribution would be very simple. The money would go into the corporate coffers as a corporate asset, or it would be distributed according to the number of shares held by each shareholder. There would thus be no danger to the absent members of the class if Mrs. Snyder brought the suit without them.

It is therefore the conclusion of this court that the interests of the utility customers in the fund created by the savings are joint, common and undivided, and that their claims may be aggregated to achieve the jurisdictional minimum. Defendant's Motion to Dismiss is hereby denied. Plaintiff's counsel will prepare an appropriate order.

